STATE OF IOWA, Appellee, v. W. J. STECKEL, Appellant.

**FALSE PRETENSES:** Intent to Defraud—Unquestioned Testimony Negativing Intent. Testimony which is unquestioned by the State, and which, on its face, conclusively negatives all intent to defraud, necessarily demands a verdict of acquittal, and, in the absence of such acquittal, a new trial.

**FALSE PRETENSES:** Indictment—Allegation of Intent. An indictment which avers that the fraudulent acts charged were done "designedly" constitutes a sufficient allegation of an "intent to defraud."

*Appeal from Jefferson District Court.*—SENECA CORNELL, Judge.

APRIL 6, 1923.

OPINION ON REHEARING OCTOBER 17, 1924.

THE defendant was indicted and convicted on a charge of cheating by false pretenses, under the provisions of Code Section 5041. He was adjudged to pay a fine of $500, from which judgment he has appealed.—*Reversed.*

*Joe R. Jaques, R. C. Leggett, T. A. Goodson, Havner, Flick & Powers,* and *Scott M. Ladd,* for appellant.

*Ben J. Gibson,* Attorney-general, *John Fletcher,* Assistant Attorney-general, *Buell McCash,* County Attorney, *D. W. Bates,* and *J. P. Starr,* for appellee.

EVANS, J.—I. The specific fact charged in the indictment was that the defendant, by fraudulently representing the contents of a purported chattel mortgage, had obtained the execution thereof by the prosecuting witnesses, L. W.

**1. FALSE PRE- TENSES: intent to defraud: unquestioned testimony negativing intent.**

Barnhart, Elmer Barnhart, and S. T. Yates; that the defendant had represented the contents of the instrument as including only four certain notes to be secured thereby, whereas, it did include three other notes additional thereto, and had further represented such contents to include only the live stock of the mortgagors, whereas, in fact, it did include all their personal property, including farm implements. The record is unnecessarily voluminous, and contains much matter that ought not to have been included. A former opinion was filed by us herein, which was later set aside by the granting of a rehearing. To our minds, the serious question before us on this appeal is the sufficiency of the evidence in the record to sustain a conviction of the crime charged. Because of our conclusion on that question, we shall confine our discussion thereto.

The chattel mortgage under consideration was executed on September 30, 1921. It purported to secure seven notes, totaling more than $10,000, all of which were valid and subsisting notes owed to the defendant by the prosecuting witnesses. The mortgage also purported to cover all the personal property

owned by the mortgagors, either jointly or severally. A brief preliminary statement of the facts leading up to the transaction of September 30th will be of some aid to an understanding of the events of that day. L. W. Barnhart is the father of Elmer Barnhart and the father-in-law of S. T. Yates. These three men were jointly interested in their farming operations. They moved into Davis County in March, 1920, upon a farm of 360 acres recently acquired by L. W. Barnhart. This farm was incumbered by a first mortgage for $27,500, bearing 5½ per cent interest. It is referred to in the record as the Fortune farm. Shortly thereafter, L. W. Barnhart purchased the Battin farm of 160 acres, lying across the road from the Fortune farm. He applied to the defendant for aid in financing the purchase. The defendant obtained for Barnhart a first mortgage loan thereon of $15,000, the mortgagee thereof being an outside corporation. He further loaned on behalf of himself the sum of $4,000, and took a second mortgage therefor. He loaned to him the further sum of $4,000, and took a second mortgage on the Fortune farm therefor. In the late summer of 1921, Barnhart applied to the defendant for further assistance. This had particular reference to a debt of approximately $2,000, which was pressing him for payment. This debt was held by one of the banks in Des Moines. The defendant responded to this request, and took the note of the three prosecuting witnesses for $2,000. In the meantime, he had advanced to them other sums, so that he was holding their notes for the sums of $80, $320, and $305. Concededly, they were to give him a chattel mortgage, to secure some or all of these notes. A skeleton mortgage was drawn on September 21st, which contained no description either of notes or of the property to be covered. Whether the mortgage was signed by any of the parties on that day is in dispute. It is the testimony of the defendant that L. W. Barnhart and wife signed on that day, and that it was done for the convenience of the wife. The transaction, however, was not consummated until September 30th. On that day, the three prosecuting witnesses appeared at the defendant's bank for the purpose of the consummation. Concededly, the final preparation of the mortgage was done on that day, and its final execution and delivery were had on that

day. The mortgage actually signed contained the following description of property:

"All personal property of whatever nature or kind any of us now own and keep or which we hereafter may use, raise, keep or acquire, be it live stock, feed, grain, hay, straw, implements, harness, machinery, vehicles, automobiles or any other personal property whatsoever, while this mortgage remains unsatisfied of record, and which constitutes principally at present of the following: Forty-eight cows, twenty-one heifer calves, fourteen yearling heifers, eighteen bull calves, six steers—yearlings, twelve mares, seven geldings. One mare colt. Two horse colts. One stallion. One mower. Two cultivators. Two sulky plows. Four set harness. Sixty-four head of brood sows and shoats."

It also contained the following description of notes to be secured thereby:

"One for two thousand dollars payable April 1, 1922, and $4,000.00 due March 1, 1923, and $4,000.00 due April 1, 1925, and $80.00 due Oct. 1, 1922, and $320.00 due Dec. 1, 1921, and $827.50 due Dec. 1, 1921, and $305.00 due in installments payable with interest at the rate of eight per cent per annum according to the tenor thereof, then these presents to be void, otherwise in full force."

The foregoing description of the property and of the notes was all written into a blank form of mortgage by the use of a typewriter. The printed form of the mortgage also contained the following:

"This mortgage is also expressly made to secure any existing indebtedness, or future loans, advances or indebtedness now due or to become due from said grantors, or any or either of them, to said grantee, or his beneficiaries, and to be security for all attorney's fees incurred in enforcing the provisions hereof, or the collection of any claim arising hereunder."

It appears that, on September 30th, it was discovered that the unpaid taxes of Barnhart amounted to $827.50. They were about to become delinquent, which delinquency would cause the first mortgages upon the farms to become due, as for breach of condition. It became necessary, therefore, for the defendant to

finance the Barnharts to that additional extent. It also appeared that, prior to that date, L. W. Barnhart had bound himself to the holder of the mortgage of $27,500 to pay 7½ per cent interest thereon, in lieu of 5½ per cent. This operated to the prejudice of the defendant as a second mortgagee, and impaired his security.

The foregoing are the salient circumstances surrounding the parties immediately preceding the execution of the mortgage in question. Previous to that time, there never had been any agreement by the defendant to advance money for the payment of the taxes, nor had he ever assented to the increase of the rate of interest on the first mortgage. Before the mortgage was signed, it was read by Elmer Barnhart and S. T. Yates, and it was read by the defendant to L. W. Barnhart at his request, he being unable to read the same for want of spectacles. The evidence for the State on the trial as given by these three witnesses was: That the mortgage as drawn when they signed the same purported to secure only the notes for $2,000, $80, $320, and $827.50, and that it did not include the two $4,000 notes or the $305 note. Their further evidence was that it included only their live stock as the mortgaged property, and that it did not include any other property. This testimony has reference to the written portions of the mortgage. The charge of the indictment is that the defendant falsely represented the true contents of this mortgage and deceived the mortgagors thereby. This was done as to L. W. Barnhart by falsely reading the mortgage, as contended. How it was done as to Elmer Barnhart and Yates, who themselves read the mortgage before they signed it, is not indicated either in the indictment or in the evidence. The inference sought to be drawn is that in some manner a change was made in this mortgage after the parties had read it or after they had signed it. Though they testified that they had signed the mortgage in duplicate, they testified also that they had read and heard read the mortgage in this record, and that it did not at that time contain the respective descriptions above given. There is no dispute in the record but that they owed to the defendant all the notes described in the mortgage. This was the general state of the evidence at the close of the State's case.

The defendant's version of the affair, as appears in the evidence on his behalf, was that the incident of delinquent taxes and that of the increased rate of interest on the first mortgage had naturally changed the relation of the parties as to the proposed loan of $2,000; that, as a condition to advancing any more money, he required them to agree to secure all their debts owed to him, by a chattel mortgage on all their property; that a written contract of that kind was then and there drawn and signed by the parties. Such written contract was identified and put in evidence. Such contract is known in this record as Exhibit AO, and is as follows:

"Sept. 30, 1921.

"L. W. Barnhart and wife, John E. Barnhart and wife and S. T. Yates and wife, agree with W. J. Steckel that they will execute a chattel mortgage on what property is used, raised and kept, of all kinds, on the two farms near Bloomfield, they now occupy, or elsewhere, to secure all they each or all owe to W. J. Steckel now or hereafter and shall deposit Life Ins. policies with said Steckel and any advances hereafter made by Steckel to any or all of said parties shall be secured by said chattel mortgage and the real estate mortgages made to W. J. Steckel, Trustee, on the 360 acres & 160 acres named in said mtgs., being the 'Fortune' and 'Battin' land. We have furnished Steckel a partial list to include in ch. mtg. which shall be made to cover all property personal we now own or shall hereafter own.

"Catherine Barnhart.
"L. W. Barnhart.
"Neva Barnhart.
"J. Elmer Barnhart.
"Mabel Grave Yates.
"S. T. Yates."

The evidence in defendant's behalf showed that this contract was at that time signed by L. W. Barnhart, Elmer Barnhart, and S. T. Yates, and that, some days later, it was signed by the wives respectively. It will be noted from the foregoing that what was therein agreed to be done was what *was* done in specific form by the mortgage. If the foregoing contract is to

be deemed a verity, then the chattel mortgage in question did nothing more than to conform thereto.

The defendant having rested his evidence, the State put on its rebuttal evidence. It offered no rebuttal as to Exhibit AO. No signature thereon was denied, nor was any explanation thereof of any kind offered. On the contrary, such instrument was entirely ignored in the rebuttal.

It is urged for the State that the instrument was contradicted in advance by the State's witnesses, and that no further contradiction was necessary. This instrument first came into the record in the defendant's evidence. There was no reference to it in the State's evidence. The argument for the State at this point seems to be that, if the instrument was contradictory to evidence given by the State, then it was wholly contradicted by such prior evidence. For instance, we are cited to the testimony of S. T. Yates, given on behalf of the State, as follows:

"I signed no other papers for him that I now have any recollection of. There were no other papers signed at Steckel's on September 30th by me, except the chattel mortgage and the duplicate and the tax notes, that I remember at this time. I signed seven instruments, all told, for Mr. Steckel that I now remember."

It is argued that this is sufficient contradiction, though given in the State's main case, and without any specific reference to this instrument. It is further argued that, if the mortgage was fraudulent, then this paper was fraudulent also. But the very question to be determined is, Was the mortgage fraudulent? Exhibit AO bears significantly upon that question, and tends to negative fraudulent intent. It is further suggested in argument that this Exhibit AO may have been the supposed duplicate which the parties signed. But this is argument, and not evidence. Nor is there anything in the appearance of the two papers calculated to induce the belief that they were duplicates. The mortgage was drawn upon an ordinary blank printed form. Exhibit AO was written with pen and ink, and covered a single page of a white sheet of paper. They bore no resemblance to each other. According to defendant's evidence, it was signed by the three men on that date, and by the wives on a

later date. If the signatures to this instrument are genuine, we know of no higher order of evidence as proof of the real arrangement and intent of the parties at that time. If these signatures were not genuine, or if there was any avoiding explanation of the instrument, it was incumbent upon the State to meet it. The witnesses were available for that purpose, if such were the fact. We know no reason why such written evidence, unchallenged, should not be deemed a verity, for the purpose of this record. This evidence being unchallenged before the court, it completely rebutted the intent to defraud in the taking of a chattel mortgage conformable thereto.

Failing to direct a verdict on that ground, the court ought to have granted a new trial.

II. In view of a new trial on remand, we ought doubtless to settle the question of the sufficiency of the indictment. It is assailed on the ground that it did not charge an "intent to defraud." In our former opinion, we held the indictment sufficient, and we adhere to that view. It is not claimed that the exact words of the statute are essential to the validity of the indictment, if their equivalent be used therein. This indictment did aver that the fraudulent acts charged were done "designedly." The word "design" is a fair equivalent of the word "intent." In *State v. Hazen,* 104 Iowa 16, we held an indictment in that form to be a sufficient compliance with the statute. It is true that the word "designedly" was used but once, and that its place in the indictment is somewhat obscure; but we think that the cited case is authority for its sufficiency, notwithstanding that the question is not free from difficulty.

2. FALSE PRE-
TENSES: indict-
ment: allegation
of intent.

On the ground already indicated, the judgment of conviction is reversed.—*Reversed.*

Vermilion, J., not participating.

All the other justices concur.